No. 2014-1037

# United States Court of Appeals
# For the Federal Circuit

SMARTMETRIC INC.,

*Plaintiff-Appellant,*

V.

MASTERCARD INTERNATIONAL INCORPORATED

AND VISA INC.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of California
in Case No. 11-CV-07126, Judge Michael W. Fitzgerald

## BRIEF FOR DEFENDANTS-APPELLEES

GARY A. CLARK
DARREN M. FRANKLIN
ANDREW KIM
SHEPPARD, MULLIN, RICHTER
  & HAMPTON LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
(213) 620-1780

*Attorneys for Defendant-Appellee
MasterCard International Incorporated*

JOSEPH MELNIK
AN P. DOAN
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
(650) 739-3939

MATTHEW J. SILVEIRA
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 626-3939

*Attorneys for Defendant-Appellee
Visa Inc.*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Defendant-Appellee <u>Visa Inc.</u> certifies the following:

1.     The full name of every party represented by me is:

Visa Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Visa Inc. is a publicly held corporation that does not have a parent, and no publicly held corporation owns 10% or more of Visa Inc.'s stock.

4.     The name of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are appearing in this Court are:

Jones Day (Joseph Melnik, Jason McDonell, Matthew J. Silveira, An P. Doan, Steven J. Corr, Alex A. Houle, Henry L. Welch, Iman Lordgooei).

Dated:      March 10, 2014          /s/ Joseph Melnik
                                    *Attorney for Defendant-Appellee*
                                    *Visa Inc.*

# <u>CERTIFICATE OF INTEREST</u>

Counsel for Defendant-Appellee <u>MasterCard International Incorporated</u> certifies the following:

1.  The full name of every party represented by me is:

MasterCard International Incorporated.

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable.

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

MasterCard Incorporated.

4.  The name of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are appearing in this Court are:

Sheppard, Mullin, Richter & Hampton LLP (Gary A. Clark,
Darren M. Franklin, Dennis J. Smith, Andrew Kim).

Dated:      March 10, 2014          /s/ Gary A. Clark
                                    _____
                                    *Attorney for Defendant-Appellee*
                                    *MasterCard International Incorporated*

# TABLE OF CONTENTS

**Page**

CERTIFICATES OF INTEREST ................................................................. i

TABLE OF CONTENTS ...................................................................... iii

TABLE OF AUTHORITIES ................................................................. vi

STATEMENT OF RELATED CASES ................................................... x

JURISDICTIONAL STATEMENT ....................................................... 1

COUNTER-STATEMENT OF ISSUES ............................................... 1

COUNTER-STATEMENT OF THE CASE ......................................... 2

    A.    Overview ............................................................................. 2

    B.    The '464 Patent .................................................................. 4

        1.    The Internet Access Problem ................................... 4

        2.    The Subject Matter of the Patent ............................. 6

        3.    The Patent Claims .................................................... 7

    C.    SmartMetric's Assertion of the '464 Patent .................... 8

    D.    Defendants' Payment Processing Systems ...................... 9

        1.    Defendants' Roles in Payment Transactions ........... 9

        2.    An Exemplary Transaction ...................................... 10

        3.    Data Flow in the Four-Party Payment Model .......... 11

        4.    Stand-In Processing ................................................. 14

    E.    Claim Construction .......................................................... 15

    F.    SmartMetric's Noncompliance With Expert Discovery
        Deadlines ........................................................................... 16

    G.    Summary Judgment ......................................................... 18

SUMMARY OF ARGUMENT ............................................................ 21

ARGUMENT ........................................................................................ 22

I.    LEGAL FRAMEWORK GOVERNING SUMMARY JUDGMENT ......... 22

II.    THE DISTRICT COURT CORRECTLY ENTERED SUMMARY
    JUDGMENT OF NON-INFRINGEMENT ................................. 23

A.    SmartMetric Failed to Show That the Accused Systems Include a "Local Access Number" or "Database" as Claimed ...................... 23

    1.    The Accused Systems Do Not Include a "Local Access Number." .................................................................. 24

        (a)    The District Court's Construction Is Compelled by the Intrinsic Evidence .................................................... 25

        (b)    SmartMetric's Contrary Interpretation Fails ................ 27

        (c)    Visa's Payment Processing System Does Not Include a "Local Access Number." ............................... 29

        (d)    MasterCard's Payment Processing System Does Not Include a "Local Access Number." ....................... 30

    2.    The Accused Systems Do Not Include "A Database Containing A List Of Access Numbers" Along With "Corresponding Location Information." ................................. 32

        (a)    The Court Correctly Construed the "Database" Term ................................................................................ 32

        (b)    Visa's Payment Processing System Does Not Include the "Database" Limitation ............................... 34

        (c)    MasterCard's Payment Processing System Does Not Include the "Database" Limitation ........................ 35

        (d)    Because Location Is Irrelevant to the Accused Systems, Each Lacks a "Database" Even Under SmartMetric's Construction .......................................... 36

    3.    The Gussin Declarations Do Not Establish the Existence of These Elements in the Accused Systems ............................ 36

        (a)    The District Court Correctly Concluded That the Gussin Declarations Failed to Raise a Triable Issue of Fact ........................................................................... 37

        (b)    SmartMetric Mischaracterizes the District Court's Ruling ........................................................................... 42

    4.    The "Local Access Number" and "Database" Limitations Are Required ......................................................................... 45

|  | (a) | SmartMetric Cannot Adopt a New Theory of the Case on Appeal | 45 |

(a) SmartMetric Cannot Adopt a New Theory of the Case on Appeal ............................................................45

(b) SmartMetric's Argument Contradicts the Claim Language .......................................................................47

B. The Undisputed Evidence Shows That Defendants Do Not Practice All Elements of the Claimed Invention ...............................48

1. Defendants Do Not Put Into Service System Claim 1 .............48

2. Defendants Do Not Perform Each Step of Method Claim 14 ...................................................................................51

C. The District Court Did Not Abuse Its Discretion in Overruling SmartMetric's Evidentiary Objections ................................52

D. The District Court's Finding of Non-Infringement of Independent Claims 1 and 14 Compelled a Finding of Non-Infringement of the Dependent Claims ..............................55

III. THE DISTRICT COURT'S ENTRY OF JUDGMENT MAY BE AFFIRMED ON TWO ALTERNATIVE INDEPENDENT GROUNDS ............................................................................56

A. SmartMetric Failed to Show That Either Visa or MasterCard Is a Claimed "Network Service Provider." ...........................................57

B. An Order Striking the Gussin Report and Declarations Was Within the District Court's Discretion, and SmartMetric Failed to Provide Any Other Evidence to Support Infringement.................58

IV. SMARTMETRIC'S REQUEST FOR SUMMARY ADJUDICATION OF THE MEASURE OF DAMAGES IS BEYOND THE SCOPE OF THIS APPEAL ..........................................................................62

CONCLUSION ..................................................................................63

DECLARATION OF AUTHORITY

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

CASES

*Aguilar-Ramos v. Holder*,
594 F.3d 701 (9th Cir. 2010) ..............................................................54

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
692 F.3d 1301 (Fed. Cir. 2012) ....................................................48, 51

*Arthur A. Collins, Inc. v. Northern Telecom Ltd.*,
216 F.3d 1042 (Fed. Cir 2000) ...........................................................37

*Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*,
616 F.3d 1249 (Fed. Cir. 2010) ..........................................................23

*Cat Tech LLC v. TubeMaster, Inc.*,
528 F.3d 871 (Fed. Cir. 2008) ............................................................25

*CBT Flint Partners, LLC v. Return Path, Inc.*,
654 F.3d 1353 (Fed. Cir. 2011) ..........................................................28

*Centillion Data Sys., LLC v. Qwest Comm'ns Int'l, Inc.*,
631 F.3d 1279 (Fed. Cir. 2011) ..............................................48, 49, 50

*Conoco, Inc. v. Energy & Environmental Int'l, L.C.*,
460 F.3d 1349 (Fed Cir. 2006) ...........................................................29

*Cool Fuel, Inc. v. Connett*,
685 F.2d 309 (9th Cir. 1982) ..............................................................63

*Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*,
524 F.3d 1254 (Fed. Cir. 2008) ..........................................................22

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
363 F.3d 1263 (Fed. Cir. 2004) ..........................................................41

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
93 F.3d 1572 (Fed. Cir. 1996) ............................................................56

*Granite Mgmt. Corp. v. United States*,
416 F.3d 1373 (Fed. Cir. 2005) ..........................................................56

*Henry v. Gill Indus., Inc.*,
983 F.2d 943 (9th Cir. 1993) ...............................................................62

*HTC Corp. v. IPCom GmbH & Co.*,
667 F.3d 1270 (Fed. Cir. 2012) ...........................................45, 46, 47

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ...............................................................45

*Intellectual Science & Tech., Inc. v. Sony Elecs., Inc.*,
589 F.3d 1179 (Fed. Cir. 2009) .................................................passim

*Jeneric/Pentron, Inc. v. Dillon Co.*,
205 F.3d 1377 (Fed. Cir. 2000) ...........................................................55

*Motionless Keyboard Co. v. Microsoft Corp.*,
486 F.3d 1376 (Fed. Cir. 2007) ...........................................................22

*Nike Inc. v. Wolverine World Wide, Inc.*,
43 F.3d 644 (Fed. Cir. 1994) ...............................................................59

*Nystrom v. Trex Co.*,
424 F.3d 1136 (Fed. Cir. 2005) ...........................................................26

*Pass & Seymour, Inc. v. Int'l Trade Comm'n*,
617 F.3d 1319 (Fed. Cir. 2010) ...........................................................47

*Phillips Petroleum Co. v. Huntsman Polymers Corp.*,
157 F.3d 866 (Fed. Cir. 1998) .............................................................41

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ..........................................27

*R & R Sails, Inc. v. Ins. Co. of Pa.*,
673 F.3d 1240 (9th Cir. 2012) .............................................................62

*Sage Prods., Inc. v. Devon Indus., Inc.*,
126 F.3d 1420 (Fed. Cir. 1997) ...........................................................45

*SEB S.A. v. Montgomery Ward & Co.*,
594 F.3d 1360 (Fed. Cir. 2010) ...........................................................52

*Singleton v. Wulff*,
  428 U.S. 106 (1976) ...............................................................45

*SmartMetric v. American Express Co.*,
  476 F. App'x 742 (Fed. Cir. 2012) .................................... 16, 17, 57

*SuperGuide Corp. v. DirecTV Enters., Inc.*,
  358 F.3d 870 (Fed. Cir. 2004) ...............................................48

*TechSearch, LLC v. Intel Corp.*,
  286 F.3d 1360 (Fed. Cir. 2002) ...........................................23, 41

*Tokai Corp. v. Easton Enters.*,
  632 F.3d 1358 (Fed. Cir. 2011) ..............................................42

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ..............................................55

*United States v. Patterson*,
  292 F.3d 615 (9th Cir. 2002) ................................................52

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ...............................................59

## RULES

Fed. R. Civ. P. 26(a) ............................................................58, 59, 61

Fed. R. Civ. P. 37(c) .................................................................58, 61

Fed. R. Civ. P. 37(c)(1) ............................................................20, 59

Fed. R. Civ. P. 56(a) .....................................................................22

Fed. R. Civ. P. 56(c)(1)(A) .............................................................23

Fed. R. Civ. P. 56(c)(4) ..................................................................54

Fed. R. Civ. P. 56(e)(2) ..................................................................44

Fed. R. Evid. 702 ..............................................................42, 43, 53

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rule 47.5:

(a)     There have been no previous appeals in this case.

(b)     In a prior case in the same district court, SmartMetric sued MasterCard and Visa (and American Express in a separate case), alleging infringement of the patent-in-suit, U.S. Patent No. 6,792,464 ("the '464 patent") based on payment systems and methods using different (contactless) smart cards. Following claim construction, the parties stipulated to entry of a judgment of non-infringement in favor of MasterCard and Visa, and SmartMetric appealed (Nos. 2011-1473, 2011-1497).  On April 11, 2012, this Court (Moore, J.) affirmed the judgment of non-infringement.  *See SmartMetric v. American Express Co.*, 476 F. App'x 742 (Fed. Cir. 2012).

## JURISDICTIONAL STATEMENT

Defendants generally agree with SmartMetric's jurisdictional statement. (SmartMetric Brief, "SMBr.," at 1.)  However, Defendants prevailed on their counterclaims for declaratory judgment of non-infringement, and only dismissed without prejudice their counterclaims for declaratory judgment of invalidity thereafter.

## COUNTER-STATEMENT OF ISSUES

This case concerns SmartMetric's contentions that payment processing systems using contact smart cards as credit or debit cards infringe the '464 patent. The primary issues for review are:

1.     Did the district court correctly hold that SmartMetric failed to show that the accused systems include a "local access number" as claimed?

2.     Did the district court correctly hold that SmartMetric failed to show that the accused systems include a "database" as claimed?

3.     Did the district court correctly hold that SmartMetric failed to show that Defendants direct or control the practice of the asserted claims?

If the Court answers "yes" to any of these issues, it should affirm.  Each basis for the district court's decision independently supports the grant of summary judgment of non-infringement.  If the Court answers all of these issues in the

negative, the Court may still affirm the entry of judgment against SmartMetric on one or both of the following alternative grounds:

4.      Did SmartMetric fail to show that either Visa or MasterCard is a "network service provider" as claimed?

5.      Did SmartMetric's failure to timely disclose an infringement expert justify an order striking the expert's report and declarations and require entry of summary judgment?

## COUNTER-STATEMENT OF THE CASE

### A.      Overview

SmartMetric's case hinges on distorting a patent for using smart cards to simplify the outmoded practice of dialing-up an Internet Service Provider ("ISP") to instead cover the entirely different use of smart cards as credit or debit cards. On appeal, SmartMetric seeks not only to have summary judgment of non-infringement set aside, but an order of summary judgment of infringement in its favor and a ruling on the proper measure of damages on remand. SmartMetric seeks this result notwithstanding (i) its failure to present any specific analysis or evidence in support of infringement, and (ii) that the district court never reached the issue of damages, much less validity.

The scope of the '464 patent is clear. In the claimed systems and methods, users desiring to access a network service provider could record access and login

information on a "data card" (*i.e.*, smart card).  Then, while traveling, users could

insert their data card in a card reader to log on at a remote location and access the

network service provider by using either a default number or a number local to that

location.  The use of local access numbers would allow users to access the network

service provider without incurring long-distance charges.  To this end, the claims

require local access numbers and corresponding location information to be stored

in a database.

That is not how SmartMetric seeks to enforce the '464 patent.  In the

accused systems, data cards are used by cardholders simply as credit or debit cards

in purchase transactions.  The transactions are communicated from merchants to

acquiring banks, and then over Visa's or MasterCard's networks between acquiring

banks and issuing banks for authorization.  These connections among the

merchants, banks, and Visa or MasterCard are independent of cardholder location.

The connections do not involve choosing between a default or a local access

number, much less an access number from a database of such numbers.

Moreover, the actors involved in the purchase transactions—cardholders,

merchants, banks, and Visa or MasterCard—each perform different roles to

allegedly satisfy the claim limitations.  Neither Visa nor MasterCard directs or

controls the other actors.

Despite this disconnect between the '464 patent and the accused systems, and its total failure of proof, SmartMetric asks this Court to direct summary judgment in its favor and to remand this case to determine how many "billions of dollars" it should be awarded. To reach that outcome, the Court would have to (a) conclude that the district court's claim constructions were erroneous, (b) depart from established law preventing plaintiffs from avoiding summary judgment through the submission of conclusory expert declarations, (c) hold that the district court improperly admitted Defendants' evidence, (d) ignore the alternative grounds for affirmance, and (e) reach issues that were not properly raised below. Instead, the Court should affirm.

### B.    The '464 Patent

The '464 patent is entitled "System for Automatic Connection to a Network." It relates to "a system and method which allows a user to automatically connect to a network service provider by using a data card (*i.e.*, a 'smart card')." (A57, 1:14-18.) The patent sought to streamline dial-up internet access. (A49-62.)

### 1.    The Internet Access Problem

The '464 patent was filed in 2000, during a bygone era when most individual users of the internet relied on ISPs or internet access providers (*e.g.*, America Online and Net Zero) for dial-up access to the internet.[1] (A57, 2:5-17.)

---

[1] Both provide internet *access*, but ISPs may provide additional internet services not at issue. The term "ISP" is used exclusively herein.

Unlike the continuous internet access of today's DSL and cable modem services, access in the dial-up era required a user to dial a phone number.  (*Id.*)  Upon contracting with an ISP for internet service, the user was provided with telephone access numbers and login credentials.  (*Id.*, 2:8-17.)

To access the internet, the user first selected an ISP access number for the computer's modem to dial.  (*See, e.g.*, *id.*, 2:8-11; A60, 8:8-9.)  Typically, this was a local number.  (A57, 2:14-17.)  The ISP would then prompt the user for login credentials (*e.g.*, a username and password), which it would verify before allowing the user to access the internet.  (*See, e.g.*, *id.*, 2:11-14; A60, 8:10-15.)  Users often "recorded" this information on their personal computers to streamline the process.  (A57, 2:20-21.)

Dial-up internet access presented difficulties during travel.  (*Id.*, 2:18-32.)  Users had to remember the phone number and account information to access the internet on another computer, or had to borrow someone else's internet access information.  (*Id.*, 2:29-32.)  Moreover, most users preferred to use an access number that avoided long-distance charges.  (*Id.*, 2:18-24.)  Although the user's ISP may have had a local access number where a user wanted to access the internet, the user would have to search for it to avoid long-distance charges.  (*Id.*, 2:25-29.)

## 2.    The Subject Matter of the Patent

The '464 patent sought to simplify internet access from any computer using a user's own ISP.  (A57, 2:39-46.)  This required giving users a convenient method for carrying their ISP access information with them, and providing a means for conveniently recalling this information whenever they wanted to access the internet.  (*Id.*, 2:18-22.)

The '464 patent contemplated using a data card to achieve these objectives. A data card, or smart card, "is approximately the size of a credit card and stores electronic data on a microchip" instead of a magnetic strip.[2]  (*Id.*, 1:18-19, 1:33-37.)  Smart cards come in two varieties:  contact smart cards that "have a microchip on one side of the card which makes contact with an electrical connector contained within the smart card reader" and contactless cards that "do not have an exposed chip on one side of the card, but have an antenna embedded within the card itself."  (*Id.*, 1:45-54.)

By placing ISP, access number, and login information on the smart card, a user would be able to carry this information around conveniently.  (*Id.*, 1:32-33.) By inserting the card into a card reader, an application program running on the data processor coupled to the card reader would allow the user to economically access

---

[2] A "smart card" or "data card" is also referred to as an "integrated circuit card."  "Integrated circuit card," "IC card," "chip card," "data card," and "smart card" are used interchangeably herein.

the user's ISP away from home. Instead of using the default access number specific to the user's home area code, the application program would obtain and use an access number local to the user's current location. (*Id.*, 2:39-46.)

### 3.    The Patent Claims

The '464 patent has 25 claims, divided roughly equally between computer system and method claims. Independent claim 1 recites:

> 1.  A computer system for all[o]wing a user to automatically access one of a plurality of net[wo]rk service providers which require information specific to the user and/or the network service provider to be accessed the computer system comprising:
>
> a data card which contains the information specific to the user and/or the network service provider to be accessed;
>
> a data card reader adapted to access at least part of the information contained on the data card when the data card is in communication therewith;
>
> a data processor in communication with the data card reader and adapted to be connected to a network; and
>
> an application program resident on the data processor, said application program being configured to automatically retrieve at least part of the information contained on the data card when the data card is in communication with said data card reader and to use said information to gain access to one of the plurality of network service providers via the network by using one of a default access number indicating a designated network service provider and a local access number from a database containing a list of access numbers [f]or the plurality of network service providers along with

- 7 -

corresponding location information for each access
number in the list,

wherein said application program is immediately
triggered upon insertion of said data card into said data
card reader.

(A61, 10:18-47.)  The only other independent claim—claim 14—recites a

method corresponding to claim 1's computer system with similar limitations.

(A62, 11:32-50.)  The remaining 23 claims depend from claims 1 or 14.  (A61,

10:48 to A62, 12:49.)

## C.  SmartMetric's Assertion of the '464 Patent

As noted, SmartMetric first asserted the '464 patent against Defendants (and

American Express) in infringement actions filed in 2010.  After the district court

construed the limitation "insertion of said data card into said data card reader" to

require physical insertion of a data card into the recess of a card reader, the parties

stipulated to a judgment of non-infringement, which this Court affirmed.  Thus,

systems and transactions using a "contactless" data card cannot infringe the '464

patent.

While the appeal of the prior case was pending, SmartMetric filed this

action.  It alleges that Defendants infringe the '464 patent "by selling, offering to

sell and using contact and contact/contactless credit card systems that use datacards

that, when inserted into a data card reader, help to establish connection to a

network."  (A63.)

- 8 -

### D.    Defendants' Payment Processing Systems

In sharp contrast to the subject matter of the '464 patent, the accused systems are used in credit and debit card transactions.  Defendants provide payment processing services over proprietary networks directly between financial institutions.  (A1524 ¶ 2, A1887 ¶ 50.)  Defendants' payment services enable cardholders to purchase goods or services using a payment card at locations where a Visa- or MasterCard-branded card is accepted as payment by the merchant. (A1524 ¶ 2, A1886-87 ¶ 48.)  Defendants' payment processing systems do not: (1) provide the cardholder access to any network, (2) provide access to networks to anyone other than Defendants' financial institution clients, or (3) utilize data based on the geographic location of the cardholder to provide payment services.  (A1524 ¶ 2, A1888-89 ¶ 54.)

### 1.    Defendants' Roles in Payment Transactions

Defendants do not issue smart cards.  Nor do Defendants provide payment terminal hardware or software at the merchant location.  (A1524-25 ¶ 3, A1887 ¶ 49-50.)  Defendants' role is to provide secure and reliable payment processing services to Defendants' financial institution clients in support of payment transactions.  (*Id.*)

Defendants have no direct relationship with cardholders or merchants regarding the use of data cards for payment.  (A1524-25 ¶ 3, A1887 ¶ 50.)  Instead,

cardholders and merchants have relationships with financial institutions, which apply the Visa or MasterCard brand to credit and debit cards and card readers distributed by the financial institutions. (A1524-25 ¶ 3, A1887-88 ¶ 51.)

To provide a secure and global transaction process, Defendants establish specifications and regulations that govern certain physical and technical aspects of payment cards and terminals. (A1525 ¶ 4, A1887 ¶¶ 49-50.) These specifications ensure interoperability among Visa- and MasterCard-branded cards and payment terminals. (*Id.*) They do not dictate how a merchant accesses or connects to a financial institution as part of a payment transaction. (*Id.*)

## 2. An Exemplary Transaction

When a cardholder makes a purchase in the United States using a Visa- or MasterCard-branded contact chip card, the following steps occur at the checkout stand:

a. The purchase amount is acquired;

b. The card is inserted into a compatible point-of-sale terminal;

c. The purchase amount is authorized in real-time;

d. The cardholder signs for the purchase; and

e. The cardholder gets a receipt for the purchase.

(*See, e.g.*, A1525 ¶ 5.) While the cardholder is waiting at the checkout stand, several parties and networks interact behind the scenes to authorize and process the

transaction. (*Id.*) The parties and networks involved and the related data flow are described below.

### 3.    Data Flow in the Four-Party Payment Model

Defendants' payment processing systems for contact chip card transactions originating from the United States operate according to the four-party payment model illustrated below:



(A1525-26 ¶ 6, A1886 ¶ 47.) In this payment model, the cardholder is a consumer using a Visa- or MasterCard-branded card to make a purchase. (A1525-26 ¶ 6, A1886-87 ¶¶ 47-48.) The merchant is any entity that accepts a Visa- or MasterCard-branded card as payment. (*Id.*) The acquirer is a financial institution that provides services to the merchant so that the merchant can accept a Visa- or MasterCard-branded card at the point-of-sale. (*Id.*) Finally, the issuer is a financial institution that issues and markets Visa- or MasterCard-branded cards to consumers and businesses. (*Id.*)

Defendants provide payment services to acquirers and issuers, not to cardholders or merchants. (A1526-28 ¶ 7, A1887 ¶ 50.) As indicated in the example above, a transaction using either of the accused systems requires authorization as part of payment processing. (A1526-28 ¶ 7, A1886 ¶ 47.)

Authorization involves the merchant obtaining approval from the issuer that the
cardholder's account may be used for payment. (*Id.*) The data flow for
authorization is as follows:

a. **Cardholder → Merchant:** The contact chip card is inserted into the
card reader at a point-of-sale terminal. (*See, e.g.*, A1526-28 ¶ 7,
A1886-89 ¶¶ 46-54.)

b. **Merchant → Acquirer:** The point-of-sale terminal retrieves data
from the card and requests authorization by transmitting the
cardholder's information, the merchant's identification number, and
the transaction information (the "Authorization Data"), to the acquirer
that the merchant has chosen as the service provider for payment
transactions. (*Id.*) The connection between the merchant and the
acquirer is solely the acquirer's responsibility. (*Id.*) Defendants have
no control over the relationship, connection, or network (if any)
between the merchant and acquirer. (*Id.*)

c. **Acquirer → Visa or MasterCard:** After receiving the Authorization
Data from the merchant, the acquirer forwards that data to Visa or
MasterCard (*i.e.*, to Visa through VisaNet or to MasterCard through
the MasterCard network). (*Id.*) The connection between the acquirer

and Visa or MasterCard is continuous, and independent of the
transaction, the cardholder, the merchant, or the issuer. (*Id.*)

d. **Visa or MasterCard → Issuer:** After receiving the Authorization
Data from the acquirer, Defendants use that data—in particular, the
cardholder's account number—to identify the issuer. Defendants then
send the Authorization Data to the issuer for authorization via a
connection that is continuous, and independent of the transaction, the
cardholder, the merchant, or the acquirer. (*Id.*)

e. **Issuer → Visa or MasterCard:** After receiving the Authorization
Data from Visa or MasterCard, the issuer conducts a series of
verifications, such as checking for fraud and whether the cardholder
has sufficient credit, and returns a response, either granting or denying
authorization. (*Id.*)

f. **Visa or MasterCard → Acquirer:** Defendants relay the issuer's
response to the acquirer through their networks. (*Id.*)

g. **Acquirer → Merchant:** The acquirer then sends the authorization
response to the merchant to accept or deny the card for payment. (*Id.*)

This process applies to all Visa and MasterCard transactions using a contact
chip card in the United States. (A1528 ¶ 8, A1888 ¶ 52.) At no step of the
transaction does the cardholder's geographic location matter. (*Id.*) For example,

the merchant does not use the cardholder's geographic location to decide which financial institution the merchant will choose to process the transaction. (*Id.*) Nor does the acquirer use the cardholder's geographic location in connecting to VisaNet or MasterCard's network. (*Id.*) The accused systems do not require or permit different payment processes based upon geographic information. (*Id.*)

### 4. Stand-In Processing

Both Visa and MasterCard provide a service called "stand-in processing" for processing transactions when an issuer is unavailable to provide such processing. (A1528 ¶ 9, A1888 ¶ 53.) Stand-in processing avoids disruption to a transaction when an issuer becomes unavailable to grant or deny authorization. (*Id.*) In general, an issuer provides instructions in advance to Visa and MasterCard about granting or denying authorization if the issuer goes offline. (*Id.*) If an issuer is unavailable, the transaction is processed by Visa's or MasterCard's stand-in processing. (*Id.*) In this way, authorization for a transaction is granted or denied on behalf of the issuer by Visa or MasterCard based upon the issuer's instructions. (*Id.*)

Neither Defendant's stand-in-processing involves a local access number nor does it depend upon the location of the cardholder at the time of the transaction, and therefore does not require any routing that would require location information.

(A1528 ¶ 10, A1888 ¶ 53.)  The routing is independent of the cardholder's location in the United States.  (*Id.*)

### E.  Claim Construction

The parties identified nine claim terms/phrases for construction, and agreed to rely solely on intrinsic evidence in construing those terms.  (*See* A247, A250-57.)  SmartMetric did not seek construction of any additional terms.

After a claim construction hearing, the district court entered an order construing all nine terms.  (A502-15.)  SmartMetric addresses two of them on appeal.  (SMBr. 39-41.)  The parties' positions and the district court's construction of those terms are summarized below:

| **Term:** "local access number" | | |
|---|---|---|
| **SmartMetric's Proposal** | **Defendants' Proposal** | **Court's Construction** |
| "an access number that is either an access number with corresponding location information or a network service provider" | "an access number, other than a default access number, that is specific to the locale of the user at the time the user attempts access" | "a number that indicates a designated or selected network service provider specific to the locale of the user at the time the user attempts access" |

| **Term:** "a database containing a list of access numbers [f]or the plurality of network service providers along with corresponding location information for each access number in the list" |
|---|
| "a database containing a list of access numbers for the plurality of network service providers along with corresponding location information for each access number in the list" |

| SmartMetric's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|
| "a database with a list of access numbers with corresponding location information or network service providers with corresponding location information" | "a database with a list of local access numbers, including at least one local access number for each of multiple network service providers as well as geographic information separate, related, and in addition to each of the access numbers" | "a database with a list of access numbers for network service providers and geographic information for each access number in the database" |

(A512-15.)  Notably, SmartMetric did not dispute that claims 1 and 14 "require both a default access number and a local access number."  (*See* A366, A385-86.)

The district court also adopted the construction of all terms that were construed by the district court and this Court in the prior case.  (A504-05.)  Thus, when defining "local access number," the district court relied on the prior construction of "access number" as "a number that indicates a designated or selected network service provider."  (A512.)  And it necessarily adopted this Court's conclusion that "[t]he plain and ordinary meaning of 'network service provider' is a provider of network services."  *SmartMetric*, 476 F. App'x at 745.

## F.  SmartMetric's Noncompliance With Expert Discovery Deadlines

The parties agreed that each party with the burden of proof on an issue would simultaneously disclose its expert reports on that issue first, followed by rebuttal expert reports.  (A148-49.)  When the initial disclosure deadline of

September 28, 2012 proved infeasible, the district court, at the parties' request,

continued that deadline to December 31, 2012. (A499-500; *see also* A218-19.)

Thus, by December 31 SmartMetric was required to serve expert reports on

infringement and damages, and Defendants on invalidity. (A499-500.)

Defendants served a joint expert report on invalidity on December 31. (A3309

¶ 1.) SmartMetric failed to serve any expert reports. (*Id.*; A1673 ¶ 6.)

The district court's continued deadline for rebuttal expert reports was

January 28, 2013. (*See* A500, A219.) Although SmartMetric had not served an

expert report on infringement, Defendants timely served expert reports on non-

infringement, in compliance with the district court's schedule and to avoid

preclusion of their non-infringement positions. (A3309 ¶ 2.) SmartMetric did not

serve any rebuttal reports. (*Id.*)

Prior to the deadlines, SmartMetric never indicated that it needed more time

to prepare expert reports or that it had insufficient discovery to do so. (A3309 ¶ 3.)

Nor did SmartMetric request an extension of the deadlines before they passed.

(*Id.*) Instead, on February 19, 2013, less than a month before the discovery cutoff,

SmartMetric applied *ex parte* to continue all unexpired case deadlines and to reset

the December 31 and January 28 expert deadlines to allow SmartMetric "to

prepare/serve expert reports." (A1035-37.) The district court granted a two-week

extension of the discovery cutoff to March 29, 2013, but denied "all other

extensions requested in Plaintiff's Application," including expert deadlines.
(A1071.)

Disregarding the district court's order, SmartMetric subsequently served two
expert reports. On March 1, 2013, SmartMetric served its "Infringement/Validity
Report from Edward L. Gussin" ("Gussin Report"). (A3310 ¶ 10, A3400-07.) On
March 24, 2013, SmartMetric served its "Damages Report from Chaya Hendrick"
("Hendrick Report"). (A2354 ¶ 6.)

### G. Summary Judgment

On March 11, 2013, ten days after serving the untimely Gussin Report,
SmartMetric moved for partial summary judgment of infringement, relying on a
declaration from Mr. Gussin that supplemented the Gussin Report. (A32 (No.
88).) SmartMetric's motion was taken off calendar twice due to SmartMetric's
filing errors and the parties' desire to consolidate the hearing for their respective
summary judgment motions; it ultimately was scheduled for hearing on June 24,
2013. (*See* A33-36 (Nos. 92, 99, 100, 108, 114, 117).)[3] SmartMetric filed its
operative motion for summary judgment on April 24, 2013, relying on the same
declaration from Mr. Gussin. (A37 (No. 118); A1253-62.)

---

[3] Contrary to SmartMetric's contention (SMBr. 19), the hearing date was not
continued to accommodate a deposition of Mr. Gussin, who was deposed as a
30(b)(6) witness before the parties stipulated to consolidation. (A1196-98, A3309
¶ 5.)

Defendants noticed three summary judgment motions for the June 24 hearing date, regarding: (1) non-infringement; (2) invalidity; and (3) damages and injunctive relief. (A37-38 (Nos. 122, 129, 119).) In support of their non-infringement motion, Defendants submitted, *inter alia*, a declaration on personal knowledge by Christian Aabye, a Visa Senior Business Leader (A1523-31); an expert declaration of Jack D. Grimes, Ph.D., Visa's rebuttal infringement expert (A1532-40); and a combined personal knowledge/expert declaration of Dr. Toni Merschen, a former MasterCard employee and its rebuttal infringement expert (A1869-1972).

In briefing the motions for summary judgment, SmartMetric submitted additional evidence and the parties raised various evidentiary objections:

- SmartMetric submitted another declaration from Mr. Gussin in opposition to Defendants' non-infringement motion.[4] (A2739-54.)

- SmartMetric objected to Defendants' declarations. (A2536-38.)

- SmartMetric included a "cross-request" for summary adjudication of damages in its opposition to Defendants' motion on damages and injunctive relief, and filed a supporting declaration from Ms. Hendrick. (A2948, A2960-69, A2978, A3060-63.)

---

[4] Although Mr. Gussin's opposition declaration bears the same title as his declaration in support of SmartMetric's motion for summary judgment, their contents differ. (*Compare* A2739-54, *with* A1253-A1262.)

- SmartMetric filed yet another declaration by Mr. Gussin with its reply.  (A3450-57.)

- Defendants objected to and moved to strike the reports and declarations of Mr. Gussin and Ms. Hendrick under Federal Rule of Civil Procedure 37(c)(1), among other grounds.  (A3288-3300, A3637-92, A3956-59.)

After two hearings, the district court granted Defendants' non-infringement motion and denied SmartMetric's infringement motion.  (A3-17.)  The court declined to strike the Gussin or Hendrick reports and declarations, considering the motions on their merits, instead.  (A6:3-4.)  The court concluded that Mr. Gussin's declarations were insufficient to defeat summary judgment and that SmartMetric had failed to establish a genuine issue of fact whether the "local access number" and "database" limitations are present in the accused systems.  (A7-11.)  The court concluded that SmartMetric failed to show that Defendants made, used, or sold the entire system of claim 1 or practiced the method of claim 14.  (A11-14.)  The court denied Defendants' other summary judgment motions as moot.  (A14:7-9.)  Finally, the court concluded that it had discretion to strike SmartMetric's expert reports and reach the same ruling on non-infringement, but overruled Defendants' objections to those reports as moot.  (A17.)

# SUMMARY OF ARGUMENT

The district court correctly entered summary judgment of non-infringement against SmartMetric on multiple independent grounds. SmartMetric has not shown that the district court erred on all grounds, as required to obtain a reversal.

The district court's claim constructions were correct. The intrinsic evidence compels the district court's construction of "local access number" and "database" in claims 1 and 14. Both the claim language and the specification fully support the conclusion that a "local" access number refers to the locale of the user at the time the user attempts access, and that "database" includes a list of access numbers and geographic information for each number.

Defendants' evidence established that both of those claim limitations are absent from the accused systems. SmartMetric's objections to Defendants' declarations misstate the nature of the evidence presented and ignore its burden of proof. Also, SmartMetric's conclusory expert declarations attempting to refute Defendants' evidence do not create a triable issue of fact. SmartMetric's attempt to inject a new contention on appeal that the limitations are not required is improper and meritless.

Defendants' evidence also established that they do not practice all elements of claims 1 and 14. SmartMetric's assertion that Defendants satisfy the claims by controlling the other actors ignores binding precedent.

Judgment of non-infringement is further mandated by two grounds not reached by the district court. One, neither Visa nor MasterCard is a "network service provider" because cardholders cannot access any network that Defendants operate. And two, the district court did not abuse its discretion in finding that the opinions of SmartMetric's infringement expert could have been properly stricken as a result of SmartMetric's failure to comply with the expert deadlines. Because those opinions comprised SmartMetric's sole infringement evidence, an order striking them would require summary judgment of non-infringement.

Finally, SmartMetric's request that the Court not only reverse the summary judgment of non-infringement and direct summary judgment of infringement, but also establish the measure of damages on remand is not properly before the Court.

## ARGUMENT

## I.   LEGAL FRAMEWORK GOVERNING SUMMARY JUDGMENT

The key inquiry on summary judgment is whether the evidence in the record raises any genuine disputes of material fact. *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1379-80 (Fed. Cir. 2007); Fed. R. Civ. P. 56(a). Because it does not have the ultimate burden at trial, a party moving for summary judgment of non-infringement meets its burden either by producing evidence negating an essential element of the patentee's case or by showing that the patentee lacks sufficient evidence to prevail at trial. *See Dominant Semiconductors Sdn. Bhd. v.*

*OSRAM GmbH*, 524 F.3d 1254, 1263 (Fed. Cir. 2008).  This shifts the burden to the patentee to identify "particular parts of materials in the record" establishing a genuine dispute for trial.  Fed. R. Civ. P. 56(c)(1)(A).  Summary judgment of non-infringement is appropriate where the patentee's "proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial."  *TechSearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002).

## II.    THE DISTRICT COURT CORRECTLY ENTERED SUMMARY JUDGMENT OF NON-INFRINGEMENT

The district court granted summary judgment of non-infringement on multiple independent grounds.  SmartMetric failed to establish a triable issue of fact that the '464 patent's "local access number" *and* "database" limitations exist in the accused payment processing systems.  Further, SmartMetric failed to show that Defendants control all elements of the patent's system claims or practice all steps of the method claims.  SmartMetric's challenges to each ground of the district court's decision lack merit.

### A.    SmartMetric Failed to Show That the Accused Systems Include a "Local Access Number" or "Database" as Claimed.

SmartMetric only alleges direct literal infringement, which requires that "every limitation set forth in a claim must be found in an accused product, exactly."  *Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249,

1253 (Fed. Cir. 2010).  Claims 1 and 14 of the '464 patent recite the terms "local

access number" and "database" as part of the following claim elements:

| Claim 1 | Claim 14 |
|---|---|
| by using one of a default access number indicating a designated network service provider and a ***local access number*** from a ***database containing a list of access numbers*** [f]or the plurality of network service providers ***along with corresponding location information for each access number in the list*** | by using one of a default access number indicating a designated network service provider and a ***local access number*** from a ***database containing a list of access numbers*** for the plurality of network service providers ***along with corresponding location information for each access number in the list*** |

(A61, 10:38-44; A62, 11:44-49, emphasis added.)[5]  Because both limitations are

required, the absence of *either* limitation in the accused systems requires summary

judgment, as the district court correctly found.

SmartMetric contends that the district court erroneously construed the "local

access number" and "database" terms and, alternatively, that it presented evidence

that those limitations exist in the accused systems regardless of how the terms are

construed.  Moreover, for the first time on this appeal, SmartMetric contends that

these limitations are not required by the claim language.  SmartMetric is wrong on

all counts.

### 1.    The Accused Systems Do Not Include a "Local Access Number."

The district court correctly construed "local access number" as "a number

that indicates a designated or selected network service provider specific to the

---

[5] All emphasis in this brief is added unless otherwise indicated.

locale of the user at the time the user attempts access." (A512.) SmartMetric's

contrary interpretation is unsupported. Neither of Defendants' accused systems

includes a "local access number" and thus they do not infringe the '464 patent.

> **(a)** **The District Court's Construction Is Compelled by the Intrinsic Evidence.**

The district court adopted the first half of its construction from the prior

case—an "access number" is "a number that indicates a designated or selected

network service provider." (*See* A504-05, A512.) The latter half of the district

court's construction addresses the meaning of the modifier "local." Relying on the

ordinary and customary meaning of "local" in the context of claims addressing a

user's network access, the court correctly concluded that "as a modification of

'access number,' a temporal dimension is required." (A512.) Moreover, "[a]n

access number can only be described as 'local' with reference to the user's

geographic location." (A513.) Because the user's geographic location necessarily

"changes with the user's movement, …. [a]n access number only becomes 'local'

when it corresponds to the user's geographic location at the time of use." (*Id.*)

With its construction of "local," the district court properly gave meaning to every

word in the claim. *See Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 885 (Fed.

Cir. 2008).

The district court's construction also is supported by dependent claims 2 and

15, which require "the user to input at least one of a *current area code* and a

*current location* for use in determining said *local access number* from said list," thereby confirming that "local" refers to the current location of the user when using the data card. (A61, 10:49-50; A62, 12:2-4.) Contrary to SmartMetric's argument, claims 2 and 15 do not nullify the need for temporal and geographic dimensions in claims 1 and 14. (SMBr. 40-41.) Those dimensions are present in claims 1 and 14 because the local access number is used "when [the user's] data card is in communication with [the] data card reader." (A61, 10:35-36; A62, 11:40-41.) Claims 2 and 15 simply establish a way for determining an access number that is "local" to the user. Further, claim differentiation principles do not require "a claim construction divorced from the context of the written description," which reinforces the correctness of the district court's construction here. *Nystrom v. Trex Co.*, 424 F.3d 1136, 1144-45 (Fed. Cir. 2005) (explaining that dependent claim specifying a "wood … board" did not preclude construing a "board" in the independent claim as being made of wood).

The specification explains that the '464 patent is directed to solving problems that arise when a user attempts to access a network service provider while traveling. (A57, 2:18-25.) It then describes how the claimed system overcomes this problem, by allowing a user to automatically access one of a plurality of network service providers via a local access number. (A58, 3:53-63.) The patent teaches that once the user identifies his or her current location, the

claimed system will query a database of access numbers for network service providers in the given locale and dial that local access number.  (A58, 4:9-18.) The specification also teaches that the local access number is specific to the locale of the user at the time the user attempts to access one of a plurality of network service providers, which is necessary so that the system can access the pertinent locale-specific access numbers from a database.  (A60, 8:29-45; A60, 8:59-65.) Accordingly, the district court's construction is reinforced by the '464 patent specification.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc).

### (b)    SmartMetric's Contrary Interpretation Fails.

To support its proposed construction—"an access number that is *either* an access number with corresponding location information *or* a network service provider"—SmartMetric summarily states that its construction "correctly uses defining language from claims 1 and 14, which specify what 'local' means in these claims."  (SMBr. 40.)  SmartMetric appears to reference a printing error in claim 1's recitation of "a list of access numbers *or* the plurality of network service providers …."  (A61, 10:41-42.)  In contrast, claim 14 recites "a list of access numbers *for* the plurality of network service providers…."  (A62, 11:46-47.)  The district court correctly concluded that "the 'for' that is in claim 14 should be read

into claim 1." (A514; *see also CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1358 (Fed. Cir. 2011) (addressing standard for correcting a patent).)

The '464 patent specification provides ample support for the district court's conclusion that "or" in claim 1 is a misprinting of "for." (*See* A49 ("list of access number *for* the plurality of ISPs …"); A58, 3:6-8 ("list of access numbers *for* the plurality of network service providers …"); A59, 5:8-9 (same).) In fact, the use of "or" in the '464 patent appears only in claim 1. And, the prosecution history confirms that "or" is a typographical error because claim 1 as originally filed recited "a list of access numbers *for* the plurality of network service providers." (A316, line 22.) Not only does SmartMetric's construction fail to account for this printing error, but it is nonsensical, as it allows an access number to be defined as a network service provider even though these are two distinct terms.

SmartMetric also repeats its contention that the "PTO's reasons for allowance (A0325) do not define/construe 'local number' as the" district court did. (SMBr. 41.) Putting aside that the term "local number" does not appear in the patent, the PTO did not define or construe the term "local access number," period. Ironically, the page of the prosecution history cited by SmartMetric reinforces that its construction is erroneous, as the PTO examiner recites the "list of access numbers *for* the plurality of network service providers" language that SmartMetric asks this Court to ignore. (A0325 ¶ 3.1.)

SmartMetric's new contention that "'local number' refers to the degree of [geographic] proximity between the processing location and the data card reader where a transaction originates" gets it no further. (SMBr. at 41.) SmartMetric waived that argument by failing to raise it below. *See Conoco, Inc. v. Energy & Environmental Int'l, L.C.*, 460 F.3d 1349, 1358 (Fed Cir. 2006). Moreover, there is no basis to hold that local refers to a "processing" location, a term that is foreign to the '464 patent. Rather, this is nothing more than a bald attempt to expand the scope of the patent to cover the accused payment processing systems.

### (c)    Visa's Payment Processing System Does Not Include a "Local Access Number."

Visa is not a provider of access to networks, and the Visa system does not provide or utilize any access information that "indicates a designated or selected network service provider specific to the locale of the user" through which a cardholder may access VisaNet or another network. (A1529 ¶ 11.) Nor does the Visa system require or use local access numbers to provide payment processing services to Visa's financial institution clients. (*Id.*) Further, the locale of the cardholder is immaterial to the Visa system, which aims to provide one card to be used by a cardholder anywhere in the world. (*Id.*) As the district court recognized, "'[a]t no step of the transaction does the cardholder's geographic location matter.'" (A8:18-19.)

SmartMetric did not identify any evidence to dispute the absence of a local access number in Visa's accused system. In fact, when asked to point out a "local access number" in the documents that SmartMetric contends describe the accused Visa system, SmartMetric's expert Mr. Gussin confirmed that none of them shows a "local access number." (A1542 ¶ 2, A1597:4-6, A1606:6-10, A1609:25-A1610:4, A1611:13-17.) Further, in SmartMetric's statement of genuine disputes of material fact, SmartMetric failed to dispute that the Visa system does not require or use local access numbers to provide payment processing services, and that the cardholder's geographic information at the time the transaction occurs is neither required nor used by Visa to process the payment transaction. (*See* A2599-2600.)

Because Visa's accused system does not include a "local access number," it does not satisfy the "using one of a default access number indicating a designated network service provider and a local access number" limitation of claims 1 and 14 and, therefore, does not infringe those claims. (A1535-36 ¶¶ 9-10.)

### (d) MasterCard's Payment Processing System Does Not Include a "Local Access Number."

MasterCard's system also lacks a "local access number." (*See* A1889 ¶¶ 56-59.) Mr. Gussin testified that MasterCard has "backup routing," or stand-in processing, that allegedly relates to the "local access number" limitation. (A1542 ¶ 2, A1563:5-14, A1564:23-A1565:16.) However, SmartMetric did not show that MasterCard's stand-in processing uses a local access number. Mr. Gussin admitted

he is unaware of any circumstance under which a local access number from a
database is used for stand-in processing.  (A1569:2-11.)  He acknowledged that
MasterCard performs stand-in processing in St. Louis and was unaware of any
other locations.  (A1570:13-20.)  He could not explain how the stand-in processing
that occurs at the centralized St. Louis site is in any way "local."  (A1570:23-
A1571:6.)  Ultimately, Mr. Gussin could not explain how the location of the stand-
in processing depends at all upon the location of the user.  (A1573:22-A1574:14.)

In fact, MasterCard's stand-in processing does not use a local access
number.  The documents show that stand-in processing happens at MasterCard's
centralized St. Louis Operations Center, not at a location specific to the locale of
the user or the merchant.  (*See* A2835, A2847, A2834.)  Below is a flow diagram
showing MasterCard's stand-in processing server in St. Louis.



Secondary Path for Online Customers—To Stand-In System Processing

(A2836.)  As illustrated in the flow diagram, there is only one stand-in processing server, not multiple servers depending upon the locale of the user or the merchant.

Because MasterCard's system lacks a "local access number," it does not infringe claims 1 and 14.

> **2.    The Accused Systems Do Not Include "A Database Containing A List Of Access Numbers" Along With "Corresponding Location Information."**

Although the '464 patent's "database" limitation is related to the "local access number" limitation, the absence of the former limitation in Defendants' system provides an independent basis for summary judgment of non-infringement.

> **(a)    The Court Correctly Construed the "Database" Term.**

Claims 1 and 14 explicitly require "a database" that contains at least (a) "a list of access numbers" and (b) "corresponding location information for each access number in the list."  (A61, 10:38-44; A62, 11:44-49.)  The claims make clear that these access numbers relate to network service providers, and geographic location information is required for each access number in the list, because their function is to "gain access to one of the plurality of network service providers … by using one of … a local access number from a database …."  (A61, 10:37-41; A62, 11:41-45.)  Thus, the district court correctly construed the "database" language in both claims as "a database with a list of access numbers for

- 32 -

network service providers and geographic information for each access number in the database." (A513-14.)

The '464 patent specification is entirely consistent with the court's construction. (*See* A58, 3:64-4:1 (referring to a database with "a list of network service providers *within each country and local area location*"); A60, 8:37-45 (describing diagram showing that a user accesses a database "to retrieve all of the *locales which are in a particular country*"); A60, 8: 46-48 ("The ISPs located *within that particular locale* are then displayed and the user selects a particular ISP from this list ….").)

SmartMetric does not distinguish its challenge to the construction of the "database" term in claims 1 and 14 from its challenge to the construction of "local access number." (*See* SMBr. 37, 39-41.) Essentially, SmartMetric relies on the printing error discussed above (*see supra* Part II.A.1(b)) to read "corresponding location information *for each access number*" out of the claim. Moreover, SmartMetric's proposed construction—"a database with a list of access numbers with corresponding location information *or* network service providers with corresponding location information"—fails to define the phrase "corresponding location information," leaving the Court to guess as to what is meant by that term. SmartMetric's proposed construction obscures, rather than clarifies, the claim language. The district court's construction was correct.

### (b) Visa's Payment Processing System Does Not Include the "Database" Limitation.

Visa's accused system does not include a database of access numbers for multiple network service providers with geographic information for each access number. (A1529 ¶ 12.) A database of access numbers for multiple entities is neither necessary, accessible to, nor consistent with the design of Visa's system. (*Id.*) Whereas the solution offered by the '464 patent is configured to require one of a default access number and a local access number from a database of access numbers for the user to access an ISP to connect to the Internet, the Visa system does not require or use a database of access numbers to provide payment processing services to Visa's financial institution clients. (*Id.*) Further, the cardholder's geographic information at the time of a transaction is neither required nor used by Visa to process the transaction. (*Id.*) VisaNet is available to Visa members worldwide, and a cardholder may use a Visa-branded card for payment anywhere in the world without reference to his or her geographic location. (*Id.*)

SmartMetric's expert Mr. Gussin reviewed the documents describing the accused Visa system produced by Visa and concluded that these documents do not disclose a database of access numbers or corresponding location information for each access number. (A1542 ¶ 2, A1616:14-23.) Further, in its statement of genuine disputes of material fact, SmartMetric failed to dispute that the Visa system does not include a database of access numbers for multiple network service

providers with geographic information for each access number, that such a database of access numbers for multiple entities is neither required nor accessible to the Visa system, and that the Visa system neither requires nor uses a database of access numbers to provide payment processing services. (*See* A2599-2600.)

Because the accused Visa system does not include any of a local access number for multiple network service providers, geographic information for each access number, or a database that includes such information, the Visa system does not satisfy the "database" limitation required by claims 1 and 14 and, therefore, does not infringe claims 1 and 14. (A1529-30 ¶¶ 12-14.)

### (c) MasterCard's Payment Processing System Does Not Include the "Database" Limitation.

Like Visa's system, MasterCard's system lacks a "database," as required by the claims. (A1890 ¶¶ 60-63.) SmartMetric failed to identify any evidence to dispute the lack of a database of access numbers and geographic information for each access number in MasterCard's system. Mr. Gussin allegedly reviewed the documents produced by MasterCard and concluded that these documents show only a database of routing numbers, without additional location information. (A1542 ¶ 2, A1578:10-14.) In contrast, MasterCard provided direct, uncontroverted evidence establishing the absence of a "database" in the accused system. (A1890 ¶¶ 60-63.)

Because MasterCard's system lacks a database having a list of access numbers for multiple network service providers and geographic information for each access number, the system does not satisfy the "database" limitation of claims 1 and 14 and, thus, does not infringe those claims.  (A1890 ¶ 63.)

> **(d)    Because Location Is Irrelevant to the Accused Systems, Each Lacks a "Database" Even Under SmartMetric's Construction.**

Although SmartMetric does not define "corresponding location information" in its construction of the "database" term, it acknowledges that location information is required.  (A256.)  But location is irrelevant to the accused systems.  (A1529 ¶ 12, A1890 ¶ 62.)  SmartMetric's inability to identify a database with location information in either system would require summary judgment of non-infringement even if the Court adopted SmartMetric's claim construction.  (A1542 ¶ 2, A1578:10-14, A1616:14-23.)

> **3.    The Gussin Declarations Do Not Establish the Existence of These Elements in the Accused Systems.**

To support its infringement contentions, SmartMetric relied solely on Mr. Gussin's declarations.  The district court considered those declarations on the merits, correctly finding that they failed to raise an issue of fact regarding the absence of the "local access number" and "database" limitations in the accused systems.  (A6:24-A7:27, A8:27-A12:10, A13:1-10; *see also* A4093:15-A4094:5.)

SmartMetric's contention that the district court erroneously excluded Mr. Gussin's testimony lacks merit.

> **(a)    The District Court Correctly Concluded That the Gussin Declarations Failed to Raise a Triable Issue of Fact.**

The law is well established that an expert's mere allegations of infringement are insufficient to avoid summary judgment. *Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir 2000); *see also Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1252 (9th Cir. 2010) (an expert's "conclusory assertions are insufficient to avoid summary judgment").  To avoid summary judgment, a patentee's expert must set forth the factual foundation for his infringement opinion in sufficient detail for a reasonable juror to determine that all infringing elements are "actually present" in the accused system. *Intellectual Science & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1185 (Fed. Cir. 2009); *see also Clouthier*, 591 F.3d at 1252 (expert affidavit with a "limited" factual basis that failed to "address the key question" under the legal framework did not create a triable issue of fact).  A party may not avoid these rules "by simply framing the expert's conclusion as an assertion that a particular critical claim limitation is found in the accused device." *Arthur A. Collins*, 216 F.3d at 1046.

In *Intellectual Science*, Sony submitted an expert declaration in support of summary judgment, asserting that its accused products lacked two elements of a

structure required by a claim limitation of the patent-in-suit. 589 F.3d at 1181-82. In opposition, plaintiff's expert asserted that the elements existed in the accused devices, referring to and generally describing two circuit diagrams from Sony service manuals. *Id.* at 1182. The district court granted summary judgment of non-infringement on the basis that plaintiffs' expert gave "no indication as to the specific [infringing] structure" in the products he identified. *Id.* at 1183. For example, the expert did "not annotate the circuit diagrams upon which he relie[d] to point to any structural element," he did "not explain the specifications of such element," and he did "not interrelate the operation of such element relative to any other elements." *Id.*

This Court affirmed the summary judgment of non-infringement. It emphasized that plaintiff's expert did "not pinpoint where [the disputed] elements are found in the accused devices," and that "[h]is citation to a page number in Sony's Service Manual for each representative product also supplies no specific showing of an infringing structure." *Id.* at 1184. The Court stressed that

> the record must specifically identify the infringing
> features … and the reason that one of skill in the
> art would recognize them as infringing. Without that further
> identification and explanation, a reasonable juror would
> not be able to determine that those allegedly infringing
> components are actually present.

*Id.* at 1185. The expert's mere assertion that a structure in the accused products performed the function claimed in the patent was insufficient in "the absence of

any *showing* that the identified structure accomplishes the same function in the same way as the claimed structure." *Id.* "To permit a jury to conclude that" the structure satisfied the claim limitation, plaintiff's expert "needed to apply at a minimum some description about the specific features" of the structure that infringed. *Id.* at 1185-86. Because plaintiff's expert "did not supply any of the details necessary to identify an infringing device," summary judgment was required. *Id.* at 1186.

*Intellectual Science* is on all fours with this case. Defendants submitted declarations explaining that their systems lack a "local access number" and a "database." (A1529 ¶¶ 11-12; A1535-37 ¶¶ 9-10, 13; A1889-90 ¶¶ 56-63.) In response, SmartMetric submitted a declaration from Mr. Gussin.[6] (A2739-54.) Mr. Gussin purported to address the required elements in two paragraphs. In paragraph 10, Mr. Gussin cited a series of pages from unrelated documents and generally described their contents. (*See* A2743-45 ¶ 10.) Mr. Gussin did not annotate any of these pages to point out specific structures or descriptions corresponding to the claimed elements, much less explain the specifications of

---

[6] The declaration submitted in opposition to Defendants' summary judgment motion supplemented the declaration submitted with SmartMetric's affirmative summary judgment motion (*compare* A2739-51 ¶¶ 1-26, *with* A1253-61 ¶¶ 1-17), while the declaration submitted on reply in support of SmartMetric's summary judgment motion contended that the prior declarations were sufficient. (*See, e.g.*, A3453 ¶ 12.) All three declarations share the same flaws, in addition to materially exceeding the scope of the Gussin Report.

these elements or how they operate relative to other elements within the accused

systems.  As in *Intellectual Science*, this paragraph is insufficient to allow "a

reasonable juror … to determine that [the] allegedly infringing components are

actually present."  589 F.3d at 1185.

In paragraph 19, Mr. Gussin conceded that he had *not* identified the

infringing elements in the accused systems:

> Although the Visa and MasterCard documents *do not
> specifically show a database containing local access
> numbers, it can be reasonably inferred to exist* by one
> skilled in the art from the information provided in the
> documents, and the deposition testimony of the Visa and
> MasterCard experts.

(A2748:15-18.)  After admitting that the unidentified documents did not show a

"database" or "local access number," Mr. Gussin contradicted himself by

speculating about what the unidentified documents "clearly" reflect:  "a list of

routing addresses … *must be* stored in a database" and it can

> be *reasonably inferred* that the router *would* route to the
> closest available asset.  Transactions originating in the
> US for instance *would be* routed for processing within the
> US, to one of VISA's many geographically separate data
> processing centers, *preferably* to a center geographically
> close to the POS, ATM or other card-initiated
> transaction, and card reader used, as opposed to say
> Europe.

(A2748:19-27.)

By Mr. Gussin's own admission, this is speculation—inferences drawn from documents he acknowledged do not specifically identify the required elements. *See Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 876 (Fed. Cir. 1998) (expert's declarations were "wholly conclusory" where the expert "could not say that the [documents] showed the presence of [the required element] in the accused compositions and products"). Without a shred of evidence, Mr. Gussin surmised that (i) there exists a database of routing addresses, (ii) transactions may be routed for processing at a center in proximity to the location where the transactions occur, and (iii) in some unexplained manner this description exemplifies both the required "database" and "local access number" elements. Mr. Gussin provided no underpinning facts to allow one of ordinary skill in the art to recognize the allegedly infringing features as such, let alone to enable a reasonable juror to determine whether the allegedly infringing features are actually present. *See Intellectual Science*, 589 F.3d at 1185.

In short, SmartMetric's sole infringement evidence fails to preclude summary judgment. Defendants' evidence that their systems lack the "local access number" and "database" elements of the '464 patent "stands uncontradicted. [Mr. Gussin's] wholly conclusory allegations failed to raise a genuine issue of material fact." *TechSearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1375 (Fed. Cir. 2002); *see also Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed.

Cir. 2004) ("conclusory assertions" in Dynacore's expert's opinions did not create a material factual dispute for trial).

## (b) SmartMetric Mischaracterizes the District Court's Ruling.

SmartMetric contends that the district court erroneously excluded the Gussin declarations under Federal Rule of Evidence 702. (SMBr. 23-36.) That is false. The court did not exclude the Gussin declarations; rather, it "consider[ed] the analysis in" the declarations and concluded that "Gussin's presumptions lack foundation in facts." (A9:4-5.) The substantive deficiencies of Mr. Gussin's opinions did not render them inadmissible, those deficiencies simply made the opinions insufficient to preclude summary judgment. (A10:18-21 ("Without some specific guidance as to why he believes Aabye's Declaration to be false, Gussin's inferences are nothing more than guesses that do not counter Aabye's testimony and do not raise a genuine issue of material fact.").)

Rule 702 was irrelevant to the district court's decision. As in each of this Court's precedents addressed in the prior section, the district court evaluated the opinion of an infringement plaintiff's expert on its merits and found that the opinion failed to meet the plaintiff's burden on summary judgment. *See also Tokai Corp. v. Easton Enters.*, 632 F.3d 1358, 1366 (Fed. Cir. 2011) (affirming exclusion of expert declaration and explaining that even if the declaration were admissible, it was "conclusory and does not raise a genuine issue of material fact").

SmartMetric's authorities addressing exclusion under Rule 702 are therefore inapposite. (*See* SMBr. 20, 24-26.) Moreover, none of them applies this Court's precedents or those of the Ninth Circuit, which govern here.

SmartMetric also argues that Mr. Gussin's declarations are admissible because they are based on admissions in Defendants' own documents. (SMBr. 22-23.) But the fact that infringement *can* be proven by admissions gets SmartMetric nowhere, as the documents Mr. Gussin cited do *not* prove infringement. Mr. Gussin's declaration acknowledged this, stating that "the Visa and MasterCard documents *do not specifically show a database containing local access numbers*." (A2748:15-16.) Mr. Gussin also admitted this at deposition. (A1542 ¶ 2, A1578:10-14, A1616:14-23.)

Finally, SmartMetric spends several pages attempting to distinguish cases cited by the district court. Many of SmartMetric's distinctions are irrelevant because the district court did not cite those cases for the proposition that conclusory expert opinions fail to raise triable issues of fact. (*Compare* SMBr. 27 (arguing that the district court's reliance on *Lockwood*, *Becton*, and *Motionless Keyboard* "as showing Gussin's Declarations are 'conclusory,' is misplaced"), *with* A6 (citing those cases for general infringement standards).)

SmartMetric contends that *Intellectual Science* is inapposite because it hinged on an expert's failure to "identif[y] the presence of certain claim elements

in the accused system," whereas Mr. Gussin's declarations "explain where/why **<u>every</u>** claim element is present in the EMV systems." (SMBr. 27 (original emphasis).) On the contrary, Mr. Gussin declared that Defendants' documents "do not specifically show a database containing local access numbers" and relied on unexplained and unsupported inferences, instead. (A2748:15-16.) Baseless speculation regarding the existence of an element is not the same thing as identifying the presence of an element. As shown above, *Intellectual Science* is nearly identical to this case.

The remainder of SmartMetric's purported distinctions focus on narrow factual differences while ignoring the central point: conclusory expert declarations do not establish triable issues of fact.

To paraphrase the conclusion in *Intellectual Science*, this Court has never held that a patentee can survive summary judgment of non-infringement of a system claim without "*specifically* identifying" the allegedly infringing elements in the accused system. 589 F.3d at 1187. "Such a rule would conflict with the express language of Fed. R. Civ. P. 56(e)(2), which requires a non-movant to set out 'specific facts' showing a genuine issue for trial." *Id.* SmartMetric provides no basis for the Court to break new ground and depart from the Federal Rules here.

### 4. The "Local Access Number" and "Database" Limitations Are Required.

For the first time on appeal, SmartMetric contends that only "one of" a "default access number" or a "local access number" is required by the claims of the '464 patent and therefore the failure to identify a "local access number" and corresponding "database" in the accused systems does not preclude a finding of infringement. (SMBr 36-37.) This is a complete about-face from SmartMetric's position in the district court. By failing to respond to Defendants' contentions that both elements are required, SmartMetric invited the alleged error of which it now complains. SmartMetric cannot assert this argument as a basis for reversal. In any event, SmartMetric's position is meritless. The '464 patent claims an invention configured to include both default and local access numbers.

### (a) SmartMetric Cannot Adopt a New Theory of the Case on Appeal.

An appeal is not an opportunity to present a new theory. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976). "No matter how independent an appellate court's review of an issue may be, it is still no more than that—a review." *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997). A key tenet of this doctrine is that a party may not "invit[e] an alleged error below only to raise it on appeal." *HTC Corp. v. IPCom GmbH & Co.*, 667 F.3d 1270, 1282 (Fed. Cir. 2012); *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386 (9th Cir. 2010)

- 45 -

(plaintiff's failure to respond to defendants' contentions below and subsequent appellate challenge to the district court's ruling "invites the district court to err and then complains of that very error," which "cannot [be] countenance[d]"). Without recognizing this doctrine, SmartMetric attempts to attack the judgment by offering a new theory of the case that it rejected through its own actions in the district court. SmartMetric "cannot lodge that attack for the first time here." *HTC*, 667 F.3d at 1283.

SmartMetric spurned numerous opportunities to contend that a "local access number" and "database" do not limit the '464 patent claims. In the parties' joint claim construction statement, SmartMetric objected to the construction of more than four terms, but not to the inclusion of "local access number" and "database" among the terms required to be construed. (A247-48.) Nor did SmartMetric seek a construction that would nullify the "local access number" and "database" limitations. (A259-62.) In their opening claim construction brief, Defendants expressly stated that claims 1 and 14 "require both a default access number and a local access number." (A385-86.) SmartMetric was silent. Moreover, a fundamental premise of Defendants' summary judgment motion was that "each of claims 1 and 14 requires a 'local access number' and a 'database ....'" (A1507:7-10.) Once again, SmartMetric said nothing to contradict the necessity of both elements.

There is no basis to excuse SmartMetric's failure to preserve this issue for appeal. It does not raise a pure issue of law, there is no plain error, and SmartMetric had ample opportunity to raise the issue, which presents no question of great public concern and does not implicate questions of substantial justice. *See HTC*, 667 F.3d at 1282. Therefore, the Court should not consider it.

### (b) SmartMetric's Argument Contradicts the Claim Language.

SmartMetric's argument also should be rejected because it contradicts the claim language. Claims 1 and 14 address a configuration for choosing between a "default access number" and a "local access number from a database":

| Claim 1 | Claim 14 |
|---|---|
| an application program *… being configured to* automatically retrieve … information … and to use said information to *gain access* to one of the plurality of network service providers via the network *by using one of a default access number* indicating a designated network service provider *and a local access number from a database* …. | *configuring* an application program … to automatically retrieve … information … and to use said information *to gain access* to one of the plurality of network service providers via a network *by using one of a default access number* indicating a designated network service provider *and a local access number from a database* …. |

(A61, 10:32-44; A62, 11:36-49.) The invention requires the ability to select from both options even though only one option will be selected. *See Pass & Seymour, Inc. v. Int'l Trade Comm'n*, 617 F.3d 1319, 1325 (Fed. Cir. 2010) (plain claim language required device to be configured in the manner established by the claim).

Moreover, SmartMetric's argument disregards the word "and." This Court

has rejected attempts to redefine "and" as "or," contrary to the plain meaning of the

word. *See SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 885-886

(Fed. Cir. 2004) (rejecting plaintiff's argument that "'and' should be interpreted as

'or'" in claim language requiring "at least one of" various criteria joined by the

term "and"). Thus, SmartMetric's new argument also fails on its merits.

### B. The Undisputed Evidence Shows That Defendants Do Not Practice All Elements of the Claimed Invention.

SmartMetric only alleges direct literal infringement in this action. (A69.)

"Direct infringement is a strict-liability offense, but it is limited to those who

practice each and every element of the claimed invention." *Akamai Techs., Inc. v.

Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012) (quoting *BMC

Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007)). The district

court correctly held that SmartMetric failed to raise a genuine issue of fact that the

accused systems include all elements of system claim 1 or that Defendants perform

all steps of method claim 14. (A11:12-A14:5.) This is an independent basis for

affirming summary judgment of non-infringement.

### 1. Defendants Do Not Put Into Service System Claim 1.

For a system claim, direct infringement by "use" of the claimed system

requires a party to use each and every element of the system. *Centillion Data Sys.,

LLC v. Qwest Comm'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). To "use"

a system for purposes of infringement, a party must put the claimed invention into service, *i.e.*, control the system as a whole and benefit from it.  *Id.* (citing *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005)).

Claim 1 requires, among other elements, "a data processor in communication with the data card reader and adapted to be connected to a network."  (A61, 10:30-31.)  Mr. Gussin identified the "data processor" element as the terminal connected to the card and network.  (A1601:24-A1602:3.)  Defendants do not control this element.

As detailed above, payment processing using the accused systems involves four distinct parties, including the merchant.  (A1530 ¶ 13, A1886-88 ¶¶ 47-51.)  Defendants interact with the merchant only indirectly through the acquiring bank.  (*Id.*)  In the accused systems, the merchant selects and configures the equipment to process the payment transaction at the point-of-sale.  (A1530 ¶ 14, A1887-88 ¶¶ 50-51.)  Defendants do not control how the merchant interacts with the acquiring bank.  (*Id.*)  Nor do Defendants make or distribute smart cards, card readers, or card reader software.  (*Id.*)  Accordingly, Defendants do not have control over the claimed system as a whole and, thus, do not infringe claim 1.  (A1538 ¶¶ 17-18, A1886-88 ¶¶ 47-51.)

Despite failing to dispute any of these facts below (*see* A2600), SmartMetric summarily asserts that Defendants control every element of the accused systems by

setting specifications for data cards and data card readers.  (SMBr. 34.)  But the mere setting of specifications is insufficient to establish control of the system for purposes of direct infringement.[7]  Even the producer of a system that provides a necessary component of the system to its customers and technical assistance for how to use that component is not liable for direct infringement unless it "directs its customers to perform" infringing acts or "its customers act as its agents." *Centillion*, 631 F.3d at 1287.  Setting interoperability specifications does not rise even to that level.  It is entirely the merchant's decision whether to accept payments with Visa- and MasterCard-branded cards.  Moreover, the specifications relied on by SmartMetric "do not dictate how a merchant accesses or connects to a financial institution as part of a payment transaction."  (A1525 ¶ 4, A1887-88 ¶ 51.)

Finally, the district court correctly noted another glaring flaw in SmartMetric's infringement analysis.  Mr. Gussin failed to identify a specific system controlled by either Defendant that contains each limitation of claim 1.  (A11:12-A12:10.)  In fact, Mr. Gussin relied on a patchwork of documents for many different systems.  The documents cited by Mr. Gussin were dated between

---

[7] SmartMetric's evidence of a benefit to Defendants is equally deficient. (SMBr. 35.)  The evidence shows that Defendants do not bear any liability for fraud losses and thus do not stand to benefit from any fraud savings.  (*See* A3247 (p. 66:9-10), A3213 (p. 111:5-8), A3222 (p. 148:5-9).)  It is other parties to the system that would benefit from fraud savings.  (*See* A3155, A3116.)

1996 and 2012, included specifications for contactless systems that were found non-infringing in the prior case, and incorporated standards of third parties (such as EMVCo). (*See* A3265-69.) Nowhere did Mr. Gussin lay a foundation to support that this collection of documents reflected an existing system controlled by either Defendant. Absent evidence of a single accused system that embodies every element of claim 1, there can be no direct infringement.

### 2. Defendants Do Not Perform Each Step of Method Claim 14.

For a method claim, direct infringement "means the accused infringer must perform all the steps of the claimed method, either personally or through another acting under his direction or control." *Akamai*, 692 F.3d at 1307. Direct infringement may not be found where multiple independent parties perform the steps of the method claim. *Id.*

Claim 14 comprises two steps: "configuring an application program resident on a data processor" and "immediately triggering said application program upon insertion of said data card into said data card reader." (A62, 11:32-50.) Mr. Gussin confirmed that there is no evidence showing Visa performs the "configuring" step of claim 14 (A1620:8-A1621:5), and failed to address who actually performs the "configuring" step of claim 14 in the accused MasterCard

system (A1585:25-A1586:18).[8] Thus, there is no evidence to support that either Defendant directly infringes claim 14.

SmartMetric does not address claim 14 other than to acknowledge that it comprises the two steps stated above. (SMBr. 35.) To the extent SmartMetric's brief can be read for the proposition that Defendants controlled the performance of the "configuring" step of claim 14, however, it fails to cite any supporting evidence. SmartMetric adopts the same tactic that it used in the district court, making bald assertions and asking Defendants and the Court to scour the record to disprove them.

### C. The District Court Did Not Abuse Its Discretion in Overruling SmartMetric's Evidentiary Objections.

SmartMetric attempts to undermine the district court's infringement rulings by challenging the admissibility of Defendants' declarations. The district court properly exercised its broad discretion in admitting this evidence. *See United States v. Patterson*, 292 F.3d 615, 628 (9th Cir. 2002) (decision whether to admit expert testimony "may be reversed only if 'manifestly erroneous'") (internal citation omitted); *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1372-73 (Fed. Cir. 2010) (applying same standard).

---

[8] Moreover, Defendants submitted affirmative evidence that they do not perform all steps of claim 14, either on their own or through another acting under their direction or control. (A1530 ¶ 15, A1538 ¶¶ 19-20, A1887-88 ¶ 51.)

SmartMetric begins by challenging Dr. Merschen's qualifications, disregarding that he received undergraduate degrees in mathematics and natural sciences and a doctorate in mathematics, and has at least seventeen years of experience in the consumer payments industry, including in the chip card and mobile payment areas with MasterCard.[9]  (A1871-73 ¶¶ 4-6.)  Further, contrary to SmartMetric's assertion, Dr. Merschen reviewed the prosecution history of the '464 patent, to the extent that is even relevant to the infringement issues.  (A3841 ¶ 1, A3847:1-4.)  The evidence amply supports Dr. Merschen's qualification to testify on infringement by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.

SmartMetric also contests the foundation for Dr. Merschen's opinions.  But it ignores Dr. Merschen's testimony that, as a former MasterCard employee working in this area, he had personal knowledge.  (A1871 ¶ 2, A1871-74 ¶¶ 4-9.) SmartMetric further ignores that Dr. Merschen reviewed and considered documents describing MasterCard's activities and proprietary network in forming his non-infringement opinions.  (A1875 ¶ 14.)  Dr. Merschen expressly identified those materials in his expert report, which SmartMetric failed to challenge.  (*Id.*)

---

[9] SmartMetric cited Dr. Merschen's age, national origin (his "allegiance to an alien state"), and compensation in an attempt to discredit him below.  (A2536-37.)  On appeal, SmartMetric limits its argument to generic assertions that Dr. Merschen is unqualified.  (SMBr. 30.)

SmartMetric attempts to discredit the Aabye declaration by taking issue with Mr. Aabye's education outside of the United States while ignoring, as it did with Dr. Merschen, Mr. Aabye's decades of experience in the payments industry. (A3841 ¶ 1, A3857:11-24.) SmartMetric also confuses Mr. Aabye's role to be that of an expert, which he is not. Mr. Aabye is a Senior Business Leader responsible for Visa's fraud risk and authentication products. In that capacity, Mr. Aabye provided facts related to the accused Visa systems based on personal knowledge. (*See* A1524.) Both Mr. Aabye's and Dr. Merschen's declarations are admissible. *See* Fed. R. Civ. P. 56(c)(4) (declaration "must be made on personal knowledge").

SmartMetric attacks the Grimes declaration for relying on the purportedly inadmissible Aabye declaration. (SMBr. 31.) Because SmartMetric is wrong about the Aabye declaration, its challenge to the Grimes declaration also fails. *See Aguilar-Ramos v. Holder*, 594 F.3d 701, 706 n.7 (9th Cir. 2010) ("An expert is permitted to base his opinion on hearsay evidence and need not have personal knowledge of the facts underlying his opinion."). Further, SmartMetric ignores the other bases of Dr. Grimes's opinion. (A1533 ¶ 1.)

Finally, SmartMetric asserts that Defendants' declarations did not employ proper methodology. (SMBr. 26.) The gist of SmartMetric's argument is that Defendants were obliged to explicitly address the Gussin declarations and documents attached thereto, and to deny that those documents show that the

accused systems include all elements of the claims.  (SMBr. 30-31.)  This argument confuses the burden of proof.  SmartMetric bears the burden to prove infringement.  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011).  Defendants have no obligation to submit reply declarations identifying the flaws in the materials on which SmartMetric relied to oppose summary judgment.

### D.     The District Court's Finding of Non-Infringement of Independent Claims 1 and 14 Compelled a Finding of Non-Infringement of the Dependent Claims.

After concluding that SmartMetric failed to raise triable issues of fact that all elements of claims 1 and 14 were present in the accused systems or that Defendants controlled those systems, the district court correctly concluded that Defendants cannot be found to infringe any of the dependent claims either. (A13:23-27; *see Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000).)  SmartMetric does not dispute this aspect of the Court's decision.

_____

In sum, the district court's grant of summary judgment of non-infringement, and denial of SmartMetric's infringement motion, necessarily follow from the correctness of its evidentiary rulings and its rulings regarding the absence of a "local access number" *and* "database" in the accused systems *and* the failure to show that Defendants practice all elements of the '464 patent's claims.  Although

- 55 -

all of the latter rulings were correct, the Court only needs to agree with one of them to affirm the judgment.

Even if the Court disagreed with all of the district court's rulings on these issues, however, the record would not support summary judgment of infringement in SmartMetric's favor. Defendants identified additional disputed issues in their responses to SmartMetric's statement of uncontroverted facts, any one of which would preclude the relief SmartMetric requests. (A3301-05.) In fact, two additional issues not only prevent summary judgment of infringement for SmartMetric, but provide alternative independent grounds to affirm the district court's entry of judgment against SmartMetric, as discussed below.

## III. THE DISTRICT COURT'S ENTRY OF JUDGMENT MAY BE AFFIRMED ON TWO ALTERNATIVE INDEPENDENT GROUNDS

This Court may affirm the district court's judgment on any ground supported by the record, "whether or not the lower court relied on that ground." *Granite Mgmt. Corp. v. United States*, 416 F.3d 1373, 1378 (Fed. Cir. 2005); *accord Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1582-83 (Fed. Cir. 1996). Two alternative independent grounds support affirmance here: (1) SmartMetric failed to raise an issue of fact that the accused systems contain a "network service provider"; and (2) SmartMetric's only infringement evidence (the Gussin report and declarations) should have been excluded as a sanction for SmartMetric's failure to timely disclose an infringement expert.

## A.  SmartMetric Failed to Show That Either Visa or MasterCard Is a Claimed "Network Service Provider."

In addition to lacking either a "local access number" or a "database," neither Visa nor MasterCard is a "network service provider" in the context of the claims, *i.e.*, a provider that a "user" accesses.  This is fundamental to claims 1 and 14, which are concerned with a system and method "for allowing a user to automatically access one of a plurality of network service providers."  (A61, 10:18-47; A62, 11:32-50.)  In the prior case, the Court held that "[t]he plain and ordinary meaning of 'network service provider' is a provider of network services." *SmartMetric*, 476 F. App'x at 745.  However, the claimed "network service provider" is not just any provider, but one that a cardholder accesses.

Under the four-party model, Defendants provide services over a network between acquirers and issuers; they never provide cardholders access to this network.  (A1530 ¶ 16, A1891 ¶ 65.)  Providing services between financial institutions over a network related to cardholder transactions is different from providing cardholders access to that network.  (A1539 ¶¶ 21-22, A1886-91 ¶¶ 47-52, 64-65.)

In the district court, SmartMetric attempted to raise a dispute on this issue by citing MasterCard's 10-K for the year ending December 31, 2012 (referring to MasterCard's network distributed processing structure) and Mr. Aabye's deposition testimony (Visa provides services to acquirers and issuers) to argue that

Defendants provide network services to users.  (A2552.)  But it is irrelevant that Defendants provide network services to acquirers and issuers because those financial institutions are not a "user" under the claims.  (*See* A505 (construing "user" as "the person who uses a data card to access a network service provider").)  Since Defendants do not provide network access to cardholders, Defendants are not the claimed "network service providers."  (*See* 1519-20.)

SmartMetric's failure to establish that Visa or MasterCard is a "network service provider" to users provides an alternative basis to affirm the district court's judgment.

**B.     An Order Striking the Gussin Report and Declarations Was Within the District Court's Discretion, and SmartMetric Failed to Provide Any Other Evidence to Support Infringement.**

To support its infringement positions in the district court, SmartMetric relied exclusively on Mr. Gussin's expert opinions.  The district court considered this evidence on the merits, concluding that SmartMetric failed to raise a genuine issue of material fact regarding infringement.  (A6:3-A14:9, A4093:15-A4094:5.)  After reaching that conclusion, the district court considered Defendants' argument that the testimony of both Mr. Gussin and Ms. Hendrick (SmartMetric's "damages expert") should have been stricken under Federal Rule of Civil Procedure 37(c) because SmartMetric's untimely disclosure of those witnesses violated Federal Rule of Civil Procedure 26(a).  (A14-17.)  The court concluded, "even if the Court

had not granted the Motion for Summary Judgment as to Non-infringement on its merits, the Court would have had the discretion to strike SmartMetric's expert reports and reach the same ruling." (A17:7-9.) In other words, the district court concluded that because SmartMetric failed to present any evidence apart from its untimely-disclosed experts, the exclusion of those experts would have been warranted, and constituted an alternative basis for judgment.

This Court reviews Rule 37 rulings for abuse of discretion. *See Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 648 (Fed. Cir. 1994). Rule 26(a)(2) requires all designated experts to submit reports during expert discovery. Rule 37(c)(1) states that a party who "fails to provide information or identify a witness as required by Rule 26(a) … is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to these [disclosure] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed.").

It is undisputed that SmartMetric did not disclose a report from Mr. Gussin during expert discovery. Rather, SmartMetric first disclosed Mr. Gussin's report on March 31, 2013—three months after the deadline for initial expert disclosures,

two months after the deadline for rebuttal disclosure deadlines, and a week after the district court denied SmartMetric's belated request to extend those deadlines. (*See* A3310 ¶ 10, A3400-07, A499-501, A1071.)

The district court correctly rejected SmartMetric's argument that its tardy disclosure was substantially justified because it was waiting for document production from Defendants.[10] As the district court recognized, SmartMetric's experts "did not exclusively or even primarily rel[y] on documents that were unavailable to SmartMetric prior to the expert disclosure deadline" and SmartMetric did not even attempt to explain why any particular unavailable document was "critical to an opinion offered." (A15:19-20.) In fact, Defendants had produced more than 20,000 pages of information relevant to both infringement and invalidity before the initial expert deadline. (A3309 ¶ 4.) The pages attached to the Gussin Declaration reflect this, as only a fraction are marked confidential. (A1254-55 ¶¶ 4-5, A1360-1403.) Moreover, even if SmartMetric were correct that unavailable documents were critical to Mr. Gussin's opinions, it was SmartMetric's obligation to seek relief before the expert deadlines passed.

---

[10] SmartMetric acknowledges that the delay was necessitated by the absence of a protective order, but suggests that the protective order Defendants obtained was unreasonable. On the contrary, as the district court correctly found, it was SmartMetric's demand that its President, CEO, and inventor of the '464 patent have access to Defendants' highly confidential information that was unreasonable. (*See* A1002, A553-55 ¶¶ 6, 10.)

The district court also correctly held that SmartMetric's failure to comply with Rule 26(a) was not harmless. The parties agreed to the sequence of disclosures here, which called for a party with the burden of proof on an issue to disclose its expert first. (A148-49.) That sequence ensures that neither party is forced to set its defense until it understands its opponent's position. (A3961 ("precisely ordered expert disclosures are critical to fairly conducted patent litigation").) Because SmartMetric ignored the disclosure deadlines, Defendants' experts were forced to offer non-infringement opinions without knowing SmartMetric's infringement position, while SmartMetric was able to tailor its infringement opinions to the positions Defendants had disclosed. (A3309 ¶ 2.) As the district court explained, "SmartMetric had the benefit of Defendants' reports in commissioning its own experts and did not serve its reports until a time when Defendants were hamstrung by the Scheduling Order. This bell cannot be unrung. Because of SmartMetric's conduct, Defendants' steadfast compliance with Court orders was to its detriment." (A16:9-13.)

Because SmartMetric provided no other infringement evidence, an order striking Mr. Gussin's report and declarations as a Rule 37(c) sanction would require a judgment of non-infringement. That order was well within the district court's discretion. The district court held a hearing to consider the nature of SmartMetric's conduct and the availability of lesser sanctions. (*See* A3960-64,

A3973-4009.)  At the hearing, SmartMetric conceded that its disobedient conduct

was not outside of its control.  (A3986:8-22 (SmartMetric counsel admitting, "I

should have asked the court [for an extension] before the end of the year," but

expected to be able to enter a *post hoc* stipulation).)  That is "is all that is required

to demonstrate willfulness, bad faith, or fault."  *Henry v. Gill Indus., Inc.*, 983 F.2d

943, 948 (9th Cir. 1993) (missing a deadline due to a failure to reach an agreement

with counsel and being out of town constituted "disobedient conduct not shown to

be outside the control of the litigant" sufficient to justify sanctions).  Therefore,

even under the standard urged by SmartMetric, an order striking the Gussin report

and declarations would not be an abuse of discretion.  *See R & R Sails, Inc. v. Ins.

Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012).

## IV.  SMARTMETRIC'S REQUEST FOR SUMMARY ADJUDICATION OF THE MEASURE OF DAMAGES IS BEYOND THE SCOPE OF THIS APPEAL

SmartMetric acknowledges that it did not move for summary adjudication

on damages in the district court.  SmartMetric relies on the procedurally improper

"cross-request" it included in its opposition to Defendants' properly-filed motion

for summary judgment regarding damages and injunctive relief.  (SMBr. 47-48.)

The district court never even considered Defendants' cross-request, denying it as

moot upon granting Defendants' non-infringement motion.  (A14:6-9.)  Therefore,

it is not properly before the Court on this appeal.

SmartMetric's reliance on *Cool Fuel, Inc. v. Connett*, 685 F.2d 309 (9th Cir. 1982), is misplaced.  That case merely recognized a court's discretion to grant summary judgment *sua sponte* when the record establishes that the movant cannot establish an essential element of its case and therefore the non-movant is entitled to judgment.  Defendants' motion to establish that SmartMetric lacked proof of damages did not concern an essential element of *Defendants'* case; rather, damages is an essential element of *SmartMetric's* case.  Thus, even if the district court had considered Defendants' motion and concluded that evidence existed to support damages, it would not have had authority to grant summary adjudication on damages in SmartMetric's favor.

SmartMetric's damages appeal is nothing more than a request for an advisory opinion, which should be denied.

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment against SmartMetric.

Dated:        March 10, 2014                    Respectfully submitted,

/s/ Joseph Melnik
JOSEPH MELNIK
AN P. DOAN
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
(650) 739-3939

MATTHEW J. SILVEIRA
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 626-3939

*Attorneys for Defendant-Appellee Visa
Inc.*

Dated:      March 10, 2014      Respectfully submitted,


/s/ Gary A. Clark
_____
GARY A. CLARK
DARREN M. FRANKLIN
ANDREW KIM
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
(213) 620-1780

*Attorneys for Defendant-Appellee
MasterCard International
Incorporated*

# <u>DECLARATION OF AUTHORITY</u>

I, Joseph Melnik, a member of the Bar of this Court, declare that I have been

authorized to sign the foregoing BRIEF FOR DEFENDANTS-APPELLEES and

CERTIFICATES OF INTEREST on behalf of all counsel for all Defendants-Appellees,

pursuant to Fed. Cir. R. 47.3(d).

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that

the foregoing is true and correct.


Executed on:  March 10, 2014

/s/ Joseph Melnik
Joseph Melnik
*Attorney for Defendant-Appellee*
*Visa Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned certifies that the attached brief is proportionally spaced, using a proportionally-spaced typeface of 14 points and—exclusive of the exemption portions of the brief, as provided in Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b)—contains 13,873 words.  As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C), in making this certification, the undersigned has relied on the word count of the word-processing system used to prepare the attached brief.

Dated:  March 10, 2014

/s/ Joseph Melnik
Joseph Melnik
*Attorney for Defendant-Appellee*
*Visa Inc.*

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 10, 2014, I served the foregoing BRIEF FOR

DEFENDANTS-APPELLEES on counsel of record by electronic means (CM/ECF).


/s/ Joseph Melnik
Joseph Melnik
*Attorney for Defendant-Appellee*
*Visa Inc.*


SFI-848702v4